# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No.   12-29466 |
| | ) | |
| Patricia Jepson | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Judge: Timothy A. Barnes |
| | ) | |
| Patricia Jepson, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. |
| | ) | |
| Bank of New York Mellon f'/k/a | ) | |
| The Bank of New York, as Trustee | ) | |
| for CWABS, Inc., Asset-Backed | ) | |
| Certificates, Series 2006-1 | ) | |
| | ) | |
| Defendant. | ) | |

## ADVERSARY COMPLAINT

Plaintiff, Patricia Jepson, by her attorney, Kenneth E. Kaiser, brings this adversary complaint against defendant Bank of New York Mellon f'/k/a The Bank of New York, as Trustee for CWABS, Inc., Asset-Backed Certificates, Series 2006-1 pursuant to Federal Rule of Bankruptcy Procedure 7001(2),(7)and (9) and states as follows:

### COUNT I
### REQUEST FOR DECLARATY JUDGMENT TO DETERMINE THAT PLAINTIFF HAS NO INTEREST IN THE NOTE AND MORTGAGE, IS NOT A HOLDER OF THE NOTE OR A PARTY WITH A RIGHT TO ENFORCE THE NOTE, THE NOTE IS NOT A NEGOTIABLE INSTRUMENT AND DEFENDANT HAS NO LIEN ON PLAINTIFF'S PROPERTY PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7001(2) AND (9)

Now comes plaintiff, Patricia Jepson, by her attorney, Kenneth E. Kaiser, and for Count I of her adversary complaint for declaratory judgment determining that defendant Bank of New York

1

Mellon f/k/a The Bank of New York, as Trustee for CWABS, Inc., Asset- Backed Certificates, Series 2006-1 (Trust) has no valid lien on plaintiff's property, states as follows:

1. The court has jurisdiction over this matter under 28 USC 1334 and 157.

2. This is a core proceeding pursuant to 28 USC 157(b)(2) (K) and (O).

3. Venue is proper under 11 USC 1409(a).

4. The plaintiff filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 25, 2012.

5. On September 19, 2012, the Trust filed a motion for relief from the Automatic Stay.

6. Attached as Exhibit A to the Trust's motion for relief from the automatic stay are three copies of the same note payable to America's Wholesale Lender (Note). The first copy is certified on the first page as a true and correct copy of the original Note and bears no endorsement (Certified Note).The other two copies of the Note bear no certification on the first page, but they bear an undated stamped endorsement in blank on the third page below the signature line (Uncertified Note).

7. The Certified Note and the Uncertified Note(s) are payable to America's Wholesale Lender, and is therefore order paper and not bearer paper pursuant to 810 ILCS 5/3-109(b).

8. The Note is void and unenforceable order paper with a non-existant entity as the identified person.

9. The Note is not a negotiable instrument, because America's Wholesale Lender (America's) is not a legal entity, but a d/b/a name for Countrywide Home Loans, Inc.

10. A "Doing Business As" or "d/b/a" name is only a trade name and as such, not a separate legal entity in Illinois.

11. America's is not a legal entity and cannot enforce the Note payable to it in Illinois. America's is a mere nullity, not a natural person, corporation or partnership and cannot bring a suit to enforce the Note in Illinois.

12. A proceeding by or against a mere fictitious name is a nullity.

13. When an instrument is made payable to one not in existence, the instrument is void and no one can acquire any rights thereunder.

14. On April 25, 2011, Litton Loan Servicing responded to a Qualified Written Request sent by the debtor regarding her mortgage. Litton was the servicer at that time.

15. Attached to the QWR response (QWR Response) is the Certified Note with no indorsement and an unsigned allonge (Allonge) to the Certified Note containing an unsigned indorsement from America's Wholesale Lender to Countrywide Home Loans, Inc. d/b/a America's Wholesale Lender.

16. Also attached to the QWR Response was an Assignment of Mortgage (AOM) dated August 14, 2008 purporting to assign the mortgage on the property located at 1127 King Arthur Court, Palatine, Illinois 60067 (Mortgage) and the Note described in the Mortgage or referred to in the Mortgage from Mortgage Electronic Registration Systems, Inc. (MERS) as Nominee for America's Wholesale Lender to the Trust.

17. Since America's has no officers or employees, is a non-existant entity and cannot enforce the Note or Mortgage, it could not and did not execute the Allonge, indorse the Note, negotiate the Note, transfer the Note or assign the Note or Mortgage to anyone.

18. Any such attempted negotiation, transfer or assignment would be a nullity because the indorser doesn't exist.

19. Any purported indorsement, transfer or assignment by America's could not give the recipient the status of holder or an entity in possession with the right to enforce the Note.

20. America's is a non-existant entity and as such, could not nominate anyone to act on its behalf, the Mortgage naming MERS as a nominee for America's, and the AOM purporting to assign the Mortgage and Note, supposedly executed by MERS as a nominee for America's, is a nullity.

21. The Note was not payable to the corporation Countrywide Home Loans, Inc. (Countrywide) and Countrywide could not become a holder or an entity in possession of the Note from any purported indorsement, negotiation or transfer from the non-existant America's.

22. Since Countrywide was not a holder or a corporation in possession with a right to enforce the Note, any attempted negotiation, assignment or transfer to the Trust from Countrywide is a nullity.

23. The Trust has no interest in the Note or Mortgage, is not a holder of the Note or a person in possession of the Note with the right to enforce the Note.

24. On August 12, 2008, the Trust filed a foreclosure action in the Circuit Court of Cook County. Exhibit B to the complaint (Complaint) was a copy of the Certified Note with no indorsement.

25. Paragraph 2 of the complaint states, in pertinent part, as follows:

> "Attached as "EXHIBIT B" is a true copy of the Note."

26. The Illinois foreclosure act requires a copy of the note to be attached to the complaint and 735 ILCS 15-1504(C)(2) states as follows:

> "that the exhibits attached are true and correct copies of the mortgage and note and are incorporated and made a part of the complaint by express reference"

27. On March 27, 2012 the Trust filed an "Affidavit of Debt" (Affidavit) with the court in the foreclosure case signed by Rene J. Martinez who stated he was employed by Ocwen Loan Servicing, LLC.

28. Paragraph 4 of the Affidavit states as follows:

> "Based on my review of Ocwen's Servicing Records, Plaintiff owns Defendant's Note and Mortgage, true and correct copies of which I understand have been previously filed with the Court."

Martinez's statement as to who owns the Note and Mortgage is an inadmissible conclusion of law, but on March 27, 2012, the only copy of the Note and Mortgage that had been previously filed with the court was the Certified Note without any indorsement payable to America's and the Mortgage naming America's as lender that had been attached to the Complaint, and Martinez was swearing that **that** Note and that **that** Mortgage was a true and correct copy of **the** Note and Mortgage.

29. On August 12, 2008, when the Complaint was filed by the Trust, On August 14, 2008, when the AOM was executed, on April 25, 2011, when the QRW Response was written, and on March 27, 2012, when the Affidavit was signed, the only Note was the Certified Note with no indorsement.

30. If there was an Uncertified Note with an indorsement in existence on August 14, 2008, the foreclosure attorney, Codillis, would not have prepared the AOM.

31. The only explanation for not attaching an indorsed Note to the Complaint on August 12, 2008, the QWR Response on April 25, 2011, the Affidavit on March 27, 2012, and preparing the AOM on August 14, 2008 is because a Note with an endorsement did not

5

exist on those dates. The indorsement on the Uncertified Note would have to have been stamped after those dates.

32. The undated rubber stamp indorsement on the Uncertified Note bears a rubber stamp signature of a David A. Spector, Managing Director. David A. Spector could never have worked for America's because that is a non-existant entity and he was not working for Countrywide Home Loans, Inc. after August of 2006.

33. After August of 2006 any action by David Spector as a Managing Director of Countrywide Home Loans, Inc. would be ineffective and unauthorized. The use of an indorsement stamp with a signature of David Spector after August of 2006 would likewise be ineffective and unauthorized, and any indorsement made with that stamp after August 2006 is a nullity.

34. The undated rubber stamp indorsement on the Uncertified Note is from Countrywide Home Loans, Inc. to the Trust, but there is no indorsement from America's, the non-existant entity to Countrwide Home Loans, Inc., and there cannot be.

35. The AOM was executed on August 14, 2008, by Marti Noriega and Denise Bailey claiming to be Vice President and Assistant Secretary of MERS. The AOM was notarized by Brenda F. McKinzy and prepared by Codilis & Associates, P.C., the foreclosure attorney in Illinois.

36. Marti Noriega, Denise Bailey and Brenda F. McKinzy were all employees of Litton Loan Servicing in Texas not MERS.

37. The AOM states that MERS is acting as nominee for America's Wholesale Lender, a Corporation organized and existing under and by virtue of the laws of the State of _____. America's Wholesale Lender is not a corporation at all and is not organized in any state. America's Wholesale Lender is not a legal entity at all, but a non-

6

existant entity that is merely a d/b/a name that has nothing to assign and cannot assign anything.

38. The non-existant entity America's is not located in Texas or any state and is not a member of MERS. MERS is located in Virginia, not Texas.

39. Mr. Hultman MERS Treasurer signed, dated, and sent out all of the certifications of board resolutions appointing certified officers Noriega and Bailey.

40. These certifying officers, Vice Presidents and Assistant Secretaries of MERS, did not actually work for MERS and were not supervised by MERS, but were appointed at the request of a MERS' member who requested the resolution on the internet.

41. There was no actual board of directors meeting as required by MERS by-laws to appoint Noriega and Bailey, who never had actual authority to sign anything on behalf of MERS.

42. The AOM purports to assign the Note, but the Note was not payable to MERS or ever endorsed to MERS.

43. MERS never had a right to assign any note.

44. The Note indorsement was not made by David Spector. He never worked for America's and he left the employ of Countrywide Home Loans, Inc. in August of 2006.

45. The Pooling and Servicing Agreement dated January 1, 2006 (Pooling Agreement), which actually forms the Trust states in Article VIII section 8.01 on page 139 as follows:

> "The Trustee ***** shall undertake to perform such duties and **only** such duties as are specifically set forth in this Agreement" (emphasis added).

46. Under New York law the trustee must strictly comply with the Pooling Agreement. The trustee, under the Pooling Agreement, may only acquire and hold a Mortgage Loan in the manner specified in the Pooling Agreement or it may not acquire and hold it at all.

47. New York's Estates Powers and Trust Law Section 7-2.4 states:

7

> "7-2.4 Act of trustee in contravention of trust
>
> If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void."

48. 810 ILCS 5/1-301 allows the parties to an agreement to vary the statutory method of negotiation of the note by agreement as was done in the instant case pursuant to the Pooling Agreement.

49. In Section 2.01(g)(i) on page 58 the Pooling Agreement the parties to the Pooling Agreement and ancillary documents agreed to the method of negotiating the Note to the Trustee of the Trust in a manner different than that required by 810 ILCS 5/3-201 as allowed by 810 ILCS 5/1-301 where the Pooling Agreement states as follows:

> "In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered to, and deposited with, the Trustee
> \*\*\*\*\*
> the original Mortgage Note, endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse", **with all intervening endorsements that show a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note)"** (emphasis added)

50. Section 2.02(a) "Acceptance by Trustee of the Mortgage Loans", on page 62 of the Pooling Agreement states as follows:

> "The Trustee acknowledges receipt, subject to the limitations contained in and any exceptions noted in the Initial Certification in the form annexed hereto as Exhibit G-1 and in the list of exceptions attached thereto, of the documents referred to in clauses (i) and (iii) of section 2.01(g) above with respect to the Initial Mortgage Loans"

The section continues to require that the Trustee accept the Notes with the required endorsements and certify on the Closing Date, which is defined on page 17 of the Pooling Agreement as February 10, 2006 (Closing Date), and again 180 days after the Closing Date, that the Trustee holds the Mortgage Loans properly endorsed and assigned as required by the Pooling Agreement.

51. The Pooling Agreement strictly requires that the Trustee follow these requirements because a mortgage that does not meet these requirements is not a qualified mortgage under Section

8

860G(a)(3) of the Internal Revenue Code, and the Trust will not meet the requirements of a Real Estate Mortgage Investment Conduit (REMIC) under the code.

52. Section 8.11(f)and (g) on page 147 of the Pooling Agreement requires that the Trustee maintain the REMIC status of the Trust and the Trustee cannot do anything to jeopardize that status, such as accepting Mortgage Loans with notes improperly endorsed, mortgages improperly assigned or notes endorsed or mortgages assigned after the Closing Date.

53. The Note was not endorsed by all intervening endorsements. The Note bore no endorsement from America's and could not because it was a non-existing entity, it bore no endorsement from the Depositor, CWABS, Inc., or any other intervening endorser.

54. The undated rubber stamped endorsement from David Spector for Countrywide Home Loans, Inc. is the only endorsement and it did not exist on the Note until 2012, well after the February 10, 2006 Closing Date.

55. Since the Trustee could not accept the Mortgage Loan in the instant case properly endorsed and assigned before the February 10, 2006 Closing Date pursuant to the requirements of the Pooling Agreement, New York Law and the Pooling Agreement would not allow the Trustee to accept the Note and Mortgage in the instant case thereafter.

WHEREFORE, the plaintiff requests that the court enter a declaratory judgment for the plaintiff, finding that the defendant has no interest in the Note and Mortgage, the Note is not a negotiable instrument, the defendant is not a holder of the Note or a person with a right to enforce the Note, that defendant does not have a lien on plaintiff's property, and grant her such other relief as is just and proper.

## COUNT II
## INJUNCTION PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 7001(7)

Now comes plaintiff, Patricia Jepson, by her attorney, Kenneth E. Kaiser, and for her verified Count II of her adversary complaint for injunction brought on her behalf and in the name of the People of the State of Illinois pursuant to 225 ILCS 425/14(a) against defendant Bank of New York Mellon f'/k/a The Bank of New York, as Trustee for CWABS, Inc., Asset-Backed Certificates, Series 2006-1 states as follows:

1. The court has jurisdiction over this matter under 28 USC 1334 and 157.
2. This is a core proceeding pursuant to 28 USC 157(b)(2) (K) and (O).
3. Venue is proper under 11 USC 1409(a).

4-55. Plaintiff re-alleges paragraph 4-55 of Count 1 of plaintiff's complaint as if they were fully set forth herein.

56. On information and belief, plaintiff has accepted many endorsed notes payable to America's and assignments of mortgages naming America's as the lender. Many of those notes and mortgages were in in default when the Trust accepted those notes and mortgages in order to foreclose on the mortgages to collect the indebtedness.

57. According to the Complaint, plaintiff was in default when the AOM was executed on August 14, 2008.

58. 225 ILCS 425/3 states as follows:

> "A person, association, partnership, corporation or other legal entity acts as a collection agency when he or it:
>
> (a) Engages in the business of collections for others of any account, bill or other indebtedness;
> ********
>
> (d) Buys accounts, bills or other indebtedness and engages in
>
> collecting the same;"

59. Defendant's main business is purchasing and collecting notes and mortgages and defendant was formed for that purpose. Defendant does not originate loans.

60. On information and belief, many of these notes and mortgages were payable to America's and could never be validly indorsed, negotiated, transferred or assigned to defendant. Many were attempted to be indorsed, negotiated, transferred or assigned to defendant after the Closing Date, and could not be accepted after the Pooling Agreement Closing Date. In those collection efforts defendant is collecting indebtedness for others.

61. On information and belief, many of the attempted assignments were after the indebtedness was in default and defendant has bought indebtedness for its own account and is engaging in collecting the debt for its own account.

62. Defendant is a collection agency under 225 ILCS 425/3.

63. 225 ILCS 425/4 requires a collection agency collecting debts to be registered as a collection agency with the state of Illinois or another state to collect debts in Illinois.

64. The defendant was not registered as a collection agency in Illinois on August 12, 2008, when the Complaint was filed, and it is not presently registered in Illinois as a collection agency.

65. On information and belief, the plaintiff was not registered in any state as a collection agency on August 12, 2008 when the Complaint was filed, and it is not presently registered as a collection agency in any state.

66. 225 ILCS 425/14(a) entitled "unlicensed practice" states as follows:

> "Sec. 14a. The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin

    such entity from engaging in such practice. Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a temporary injunction to issue. A copy of the verified complaint shall be served upon the defendant and the proceedings shall thereafter be conducted as in other civil cases except as modified by this Section. If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice. In all proceedings hereunder, the court, in its discretion, may apportion the costs among the parties interested in the action, including cost of filing the complaint, service of process, witness fees and expenses, court reporter charges and reasonable attorneys' fees. In case of violation of any injunctive order entered under the provisions of this Section, the court may summarily try and punish the offender for contempt of court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies provided in this Act."

67. Wherefore, plaintiff Patricia Jepson, ask that the court enjoin the defendant from acting as a collection agency in Illinois without a license, enjoin defendant from foreclosing on plaintiff's property and any property in the State of Illinois and from collecting any amount from plaintiff or any person in the State of Illinois, award plaintiffs reasonable legal fees and costs pursuant to 225 ILCS 425/14(a), and grant plaintiff such other relief as the court deems just and equitable.

## **VERIFICATION**

    Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this Count II of her adversary complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she believes the same to be true.


_____
Patricia Jepson

        Respectfully submitted,

        */s/ Kenneth E. Kaiser*
        Kenneth E. Kaiser
        Attorney for Debtor/Adversary Plaintiff


Kenneth E. Kaiser    #1384090
Attorney for Debtor/Adversary Plaintiffs
502 N. Plum Grove Rd.
Palatine, IL  60067
847-991-6675